**Douglas L. TEICH, M.D., Plaintiff,**

v.

**FOOD AND DRUG ADMINISTRATION, Defendant,**

and

**Dow Corning Corporation, Intervenor–Defendant and Cross–Claim Plaintiff.**

Civ. A. No. 89–0391.

United States District Court, District of Columbia.

March 13, 1990.

Katherine A. Meyer, Harmon, Curran & Tousley and Eleanor H. Smith and Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiff Douglas L. Teich, M.D.

Melanie Ann Pustay, Atty. Advisor, Office of Information and Privacy, U.S. Dept. of Justice, Washington, D.C., for defendant FDA.

Burt A. Braverman, Cole, Raywid & Braverman and Edward M. Basile, King & Spalding, Washington, D.C., for intervenor-defendant and cross-claim plaintiff Dow Corning Corp.

MEMORANDUM OPINION

SPORKIN, District Judge.

This case involves the applicability of Exemption 4 of the Freedom of Information Act ("FOIA") to animal studies concerning the safety of silicone gel breast implants submitted by Dow Corning Corporation ("Dow") to the Food and Drug Administration ("FDA"). *See* 5 U.S.C. § 552(a)(4)(B). Both Dow and the FDA contend that the animal studies constitute "confidential" commercial information under Exemption 4 because disclosure of the studies is likely to cause "substantial harm to [Dow's] competitive position." *National Parks & Conservation v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974). Presently before the Court is plaintiff's motion to strike from the record two declarations of Robert T. Rylee, II, Vice President of Dow, unless

Dow permits plaintiff's attorneys to obtain and present the testimony of two individuals who have reviewed the animal studies at issue, in connection with their participation as expert witnesses in product liability actions against Dow.

Plaintiff has proffered that Dr. Marc Lappe, Professor of Health Policy & Ethics at the University of Illinois in Chicago, and Thomas Talcott of Talcott Development Inc., Tustin, California, are prepared to offer testimony that disclosure of the records will not cause Dow substantial competitive injury. These two individuals are restrained from offering such testimony by protective orders that were entered into at Dow's insistence in product liability cases in which they participated as witnesses.[1] Plaintiff argues that because the Court is precluded from obtaining potentially important information due to Dow's refusal to waive the protective orders or to consent to any *in camera* procedure, the Court should exercise its discretion to strike Dow's affidavits. Plaintiff asserts that his position is supported both by the Federal Rules of Evidence and by the FOIA case law in this Circuit.

Dow opposes plaintiff's motion on the grounds that it is tantamount to a request that his attorneys and experts have access to the disputed documents themselves, a notion which has been rejected by the Court of Appeals. *See Arieff v. U.S. Dept. of Navy*, 712 F.2d 1462 (D.C.Cir.1983). According to Dow, plaintiff is only entitled to the procedures set forth by the court in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Dow asserts that they have provided plaintiff with an adequate *Vaughn* index and, therefore, plaintiff's motion must be denied.

The Court accepts plaintiff's proffer as to the testimony he would offer from the two potential experts. Such testimony would be extremely useful in assisting the Court in its *de novo* determination of the commercial value of the animal studies at issue. Dr. Lappe has a doctorate degree in experimental pathology and extensive experience in reviewing and evaluating scientific studies. *See* Curriculum Vitae of Dr. Mark Lappe, Plaintiff's Exhibit L. Mr. Talcott, who operates a research and consulting firm, worked for Dow for 24 years until he resigned in 1976. While at Dow he was involved in the development of Dow's silicone gel. He has since worked at several other companies where he has overseen the research and development of silicone breast implants. *See* Affidavit of Thomas Talcott, Plaintiff's Exhibit M. Clearly, both men could offer valuable insight on the commercial value of the animal studies to Dow's competitors.

Despite Dow's protestations, this case is not governed by *Arieff*. In *Arieff*, a journalist sought to require disclosure of information as to prescription drugs supplied by the Navy to the Office of Attending Physician to the United States Congress. The district court granted summary judgment to the Navy. After reversing the district court on the merits, the Court of Appeals declined to rule that the trial judge had abused his discretion in denying plaintiff's expert access to an *in camera* affidavit that the Navy had submitted, stating:

Citizens whose personal privacy or commercial data is at issue, foreign governments that may have provided secret information to our Executive Branch, and for that matter, the officials of our Executive Branch itself, will hardly have the assurance which it is the purpose of the FOIA exemptions to provide if hostile counsel and experts can ordinarily obtain access to assertedly exempt information. Even assuming that the trial courts which permit such access will invariably be correct in their prior assessment that the favored counsel and experts are reliable and that violations of the protective order will be detectable, this is a matter in which appearance is as important as reality. The appearance, overall, will be

---

1. Dow has refused to waive these protective orders and has indicated that it would consider *seeking sanctions against the two individuals if they offered testimony in this case based upon* their knowledge of the animal studies. *See* August 28, 1989, letter attached to Plaintiff's Motion as Exhibit P.

that even in the process of sustaining an exemption the secrets to which it pertains will be compromised.

Therefore, when an affidavit disclosing information assertedly exempt from production under FOIA is proffered, we think that the district court—at least as a general matter—is limited to the stark choice of receiving it *ex parte* and *in camera*, or not receiving it at all.

712 F.2d at 1470 (footnotes omitted).

This case is different from *Arieff* for several reasons. First, unlike the situation in *Arieff*, plaintiff in this case does not seek *access* to any *in camera* submissions that have been made by the defendants. Instead, plaintiff seeks to *submit* evidence from two individuals who are already familiar with the documents and are prepared to offer testimony in support of plaintiff's position that the documents are not exempt from disclosure under exemption 4 of FOIA. Contrary to Dow's suggestion, there is nothing under FOIA law that prevents plaintiff from offering the testimony of these two experts. Rather, it is the broad protective orders entered into at Dow's insistence in unrelated cases which prevents these two individuals from offering their testimony *in camera*.[2]

Second, *Arieff* involved disclosure of an affidavit that revealed the very information at issue in the case—the names of drugs that were sent to the U.S. Congress by the Navy. In contrast, the plaintiff here does not seek testimony which would disclose the actual contents of the documents at issue. Plaintiff seeks only to allow the two individuals to present testimony concerning whether disclosure of the information contained in the documents would cause Dow substantial competitive injury. For example, the protective orders are so broadly written that they would preclude testimony that many of the animal studies were conducted on only two or three animals and thus are unreliable under current scientific standards. Such testimony would not dis-

close the actual results of the animal studies. Nevertheless, information that the tests do not meet current scientific standards would be quite relevant. Similarly, plaintiff's experts would be precluded from offering testimony as to whether the test protocols are individualized and distinctive, as Dow contends, or are standard and thus of little value to competitors. Again, such information would not reveal the results of the animal studies.

Finally, the *Arieff* Court did not attempt to fashion a hard and fast rule concerning the right of a FOIA plaintiff's experts and attorneys to have access to *in camera* submissions. Rather, the Court simply held that the trial court did not abuse its discretion in denying access to such submissions. While as a general matter the trial court may not permit such access, *Arieff* does not preclude district courts from exercising discretion to permit such access where warranted by the circumstances. *Id.* at 1470.

The Court believes that this case presents the sort of special circumstances that would warrant the measures plaintiff seek. Dow has offered testimony, through the affidavits of Mr. Rylee, that plaintiff's experts would allegedly contradict. But for the restrictions of broadly worded protective orders and Dow's evident desire to enforce those orders, the Court would have the benefit of plaintiff's expert testimony. In effect, Dow has foreclosed the opportunity for the plaintiff to contradict Dow's key witness. Indeed, Dow has refused all suggestions from both plaintiff's attorneys and the Court to accommodate the requirements of the protective orders through *in camera* procedures. *See* Transcript of December 11, 1989 Hearing.

This is not a routine FOIA request nor is this a request from one competitor seeking access to another competitor's valuable business secrets. What ultimately is at stake in this case is information about the safety of Dow's silicone gel product which has been implanted into the chests of thou-

---

**2.** It is arguable whether the scope of protective orders at issue are so broad that they would preclude all testimony concerning the studies. *See* Sample Protective Orders, Exhibit K of Plaintiff's Motion. Nevertheless, Dow has made it clear that it construes the protective orders broadly and would seek sanctions to enforce them. *See* August 28, 1989 Letter from Dow, Exhibit P of Plaintiff's Motion.

sands of women. This is the very type of case for which the Freedom of Information Act was designed. Thus, where a highly responsible plaintiff's group has brought an action on the public's behalf to obtain information which would allow scientists to determine whether there is a potentially "killer product" loose in society it certainly requires a court to scrutinize closely the issues before it. The Court is not helped in discharging its responsibility where the defendant has placed unnecessary roadblocks which foreclose an informed decision on the very important issues raised.

Dow has tried to diffuse the harmful product issue by noting its full and complete cooperation with the requests made by the FDA and by reminding the Court that if its product was in fact found harmful, the FDA certainly would have exercised its authority to remove the product from the market. The Court is not persuaded by this argument. First and foremost, in our society it is the consumer that ultimately must make the decision whether to use a product. A government agency's decision to allow a product to remain on the market should not prevent an informed consumer from making his or her own decisions after being provided with all relevant information about the product, particularly the information which plaintiff has indicated has not been provided in this case. Second, the Court was disturbed when, during oral argument, it was disclosed that the FDA has been foreclosed from obtaining information from the plaintiff's proffered experts by virtue of the same protective orders that were entered into at Dow's insistence. Dow cannot have it both ways. The public cannot be expected to rely on the FDA's "non-action" when the agency has been denied relevant information concerning the safety of a product. The Court will not allow Mr. Rylee's declarations to remain in the record while Dow has exclusive control over contrary evidence. Accordingly, the declarations of Mr. Rylee will be stricken from the record.