**Harry PACK, et al., Plaintiffs,**

v.

**Howard BEYER, et al., Defendants.**

**Civ. A. No. 91–3709 (AET).**

United States District Court,
D. New Jersey.

April 5, 1994.

John V. Jacobi, Crummy Deldeo Dolan Griffinger & Vecchione, Newark, NJ, for plaintiffs.

Dianne M. Moratti, Atty. Gen. of N.J., Trenton, NJ, for defendants.

## MEMORANDUM AND ORDER

HUGHES, United States Magistrate Judge.

This matter comes before the Court upon Plaintiffs' motion to examine certain documents. Defendants oppose the motion. The Court heard oral argument on the motion on February 7, 1994, and conducted a hearing on March 28, 1994, permitting Plaintiffs' counsel to call his own witnesses, conduct cross-examination of defense witnesses, and present further argument. For the following reasons, Plaintiffs' motion to examine certain documents is denied. Furthermore, the Court will provide for additional relief in an

attempt to conform to prior orders of the Court.

## I. BACKGROUND

Plaintiffs are inmates in the New Jersey State Prison who have been placed in the Maximum Control Unit ("MCU"). Plaintiffs claim that they have been placed in the MCU because of their race, in violation of their constitutional rights. Defendants contend that Plaintiffs' placement in the MCU is due to their affiliation with the Afrikan National Ujamma ("ANU"), an alleged terrorist organization. All cases involving this particular claim were consolidated by Order of the District Court, filed October 1, 1993.

## II. PROCEDURAL HISTORY

Following the filing of these consolidated actions, Plaintiffs moved to compel production of documents related to their placement in the MCU. Defendants objected to the production of some of the documents, claiming, in part, that they were privileged pursuant to the state secrets privilege, and cross-moved for a protective order precluding disclosure. To properly review this discovery matter, the Court held hearings on September 21, October 21, and October 30, 1992.[1] At the hearings, Plaintiffs' counsel was permitted oral argument and limited cross-examination of defense witnesses. Plaintiffs' counsel was then excluded from the courtroom, and the proceedings concluded with ex parte presentation of sworn testimony while the Court examined the questioned documents. All proceedings were recorded for the purpose of insuring appropriate appellate review. Following the hearings, Plaintiffs' motion to compel was granted in part and denied in part by Memorandum and Order filed November 25, 1992.[2]

Following an appeal of this Court's November 25, 1992 Memorandum and Order, the Honorable Anne E. Thompson vacated the Order and remanded it back for further consideration in accordance with her opinion. Judge Thompson's order was subsequently clarified to permit Plaintiffs' counsel to listen to the tapes of the ex parte portion of the hearings, and to make appropriate motions with respect to cross-examination of witnesses, presentation of witnesses or examination of documents. However, also pursuant to Judge Thompson's clarification order, Plaintiffs' counsel was not permitted to review the documents themselves.

Defendants appealed Judge Thompson's decision. Judge Thompson's order was temporarily stayed until a decision by the Third Circuit Court of Appeals. The Court of Appeals dissolved the stay and dismissed the appeal, finding that it did not have jurisdiction over the matter.

Subsequent to the original motion to compel discovery, Plaintiffs had filed a second motion to bar Defendants from offering evidence, not subject to disclosure by virtue of an assertion of privilege, at trial or at a summary judgment stage. Plaintiffs further moved to exclude any ex parte submissions of evidence. Plaintiffs motion was granted in part and denied in part by Memorandum and Order filed by this Court on November 3, 1993. The Court ordered that the Defendants were permitted to use privileged evidence released to Plaintiffs during the discovery period (or at a later time upon a showing of good cause) at summary judgment or at trial. Further, Defendants were "precluded from offering ex parte evidence in any subsequent motion practice or at trial except upon a showing that failure to permit ex parte evidence will result in a miscarriage of justice." *Pack v. Beyer*, 157 F.R.D. 219, 225 (D.N.J.1993).

After listening to the audio tapes, Plaintiffs' counsel filed the present motion to examine certain documents. The parties appeared before this Court on February 7, 1994, for oral argument. At that time, a date

---

1. This Court stated that "normally the submission of appropriate affidavits would be sufficient, but the Court found it necessary to augment the affidavits with an *in camera, ex parte* review of the disputed information." *Lumumba v. Holvey*, No. 91–3884(AET) at 3 (D.N.J. Nov. 25, 1992).

2. The Memorandum and Order granting in part and denying in part Plaintiffs' motion to compel was modified after reargument, by Order filed January 22, 1993. However, the majority of Plaintiffs' requests remained denied.

was set to conduct a hearing so that Plaintiffs' counsel could present witnesses, conduct cross-examination of witnesses who had previously appeared at the *ex parte* hearing before this Court, and present further argument or disclosure of the questioned documents. On March 28, 1994, the parties appeared before this Court to once again conduct a hearing regarding the documents. The hearing consisted of cross-examination of Mr. Holvey and further argument by counsel for disclosure of the questioned documents.

## III. DISCUSSION

This particular discovery matter, disclosure of the contents of Internal Affairs files on numerous state prisoners, began by formal motion in September, 1992. This process has consisted of, at least four days of hearings, a written decision by this Court, reargument before this Court, an appeal to the District Court, a remand, a motion for clarification, an appeal to the Circuit Court, a temporary stay (later dissolved), a dismissal of the appeal to the Circuit Court, and the instant motion to examine certain of the documents in question.

In an effort to bring some finality to this matter, the Court has attempted to consider as full a factual record as possible and to decide all legal issues in the remand order of the District Court, the present motion of Plaintiffs, and the prior order of this Court relating to use of evidence.

To that end, the Court will first address the remand and the efforts taken to conform to the direction of the District Court. Second, the Court will consider the motion to examine the questioned documents so as to effectively conduct an "adversary process". Third, the Court will reconsider the applicability of the state secrets privilege and whether the documents, even if privileged, should, nonetheless, be disclosed under a protective order. Finally, the Court will attempt to conform the instant motion and the remand order to prior orders of this Court concerning ultimate disclosure of certain of the questioned documents.

### A. Remand From the District Court

■ In considering the initial matter of whether the state secrets privilege applied to the questioned documents, the Court conducted hearings governed by a protective order. That order, reproduced in the Court's Memorandum and Order filed November 25, 1992, provided in pertinent part that all proceedings were to be conducted on the record and that Plaintiffs' counsel could participate except when the Court heard sworn testimony which explained the precise nature of the questioned documents.

Courts have traditionally relied upon *in camera* testimony and affidavits to determine disclosure of privileged documents in a variety of cases, both civil and criminal.

In *United States v. Arrington*, 618 F.2d 1119 (5th Cir.1980), Defendant requested the identify of the confidential informant and filed a motion to suppress the search warrant. After a hearing, the trial judge questioned, *in camera*, the officer to whom the informant had reported, and subsequently denied the motion to suppress and refused to disclose the informant's identity. *Id.* at 1125. The Fifth Circuit Court of Appeals upheld the trial judge's refusal to reveal the identity of the informant. *Id.* at 1126.

In *United States v. Southard*, 700 F.2d 1 (1st Cir.1983), Defendants challenged the affidavit upon which the search warrant and wiretap warrant were issued. The trial court conducted an *in camera* interview of the agent who submitted the affidavit, to inquire into the factual aspects of the affidavit. The First Circuit Court of Appeals stated that "*ex parte, in camera* hearings are part of a trial judge's procedural arsenal ..." *Id.* at 11. The Court of Appeals stated that it was well within the Court's discretion to interview the officer, in an *ex parte, in camera* fashion. *Id.* The Court was troubled by the fact that no record was made of the *in camera* proceedings, but nevertheless upheld the trial court's order. The concern centered upon the absence of any record which could be reviewed to determine the appropriateness of the trial court's decision. In the present case, a record was made of *all* proceedings, which was available for any appellate review.

Moreover, Courts have relied upon *in camera* affidavits when faced with claims asserted under the Freedom of Information Act ("FOIA"), during dispositive motion practice.[3] Review of affidavits *in camera* is most frequently utilized when the government asserts an exemption under the FOIA. *See Arieff v. U.S. Department of the Navy,* 712 F.2d 1462, 1469 (D.C.Cir.1983); *see also Phillippi v. CIA,* 546 F.2d 1009, 1013 (D.C.Cir.1976); *Campbell v. HHS,* 682 F.2d 256, 265 (D.C.Cir.1982); *Playboy Enterprises Inc. v. Department of Justice,* 677 F.2d 931, 935 (D.C.Cir.1982). The D.C. Circuit Court of Appeals even went so far as to reverse the District Court for not accepting an *in camera* affidavit. *Arieff* at 1469; *citing, Public Citizen Health Research Group v. Department of Labor,* 591 F.2d 808 (D.C.Cir1978).[4]

The Third Circuit Court of Appeals, when faced with a Plaintiff seeking F.B.I. documents, pursuant to the FOIA, has stated,

> In both the ordinary and the exceptional case, *in camera* affidavits and submissions are authorized and the district court may resort to them in arriving at its ultimate determination. In both instances, the district court must have furnished to it, in whatever form, public or private, all of the detailed justification advanced by the government for non-disclosure.

*Lame v. United States Dept. of Justice,* 654 F.2d 917, 922 (3d Cir.1981).

In *Patterson by Patterson v. F.B.I.,* 893 F.2d 595 (3d Cir.1990), Plaintiff filed suit seeking relief for the F.B.I.'s failure to comply with the FOIA. The Third Circuit Court of Appeals upheld the District Court's use of an *in camera* affidavit, which described the documents, located the classified portions and asserted the privilege. The Court of Appeals conducted its own review of the *in camera* submissions and affidavits, and affirmed the District Court's decision, granting summary judgment in favor of the F.B.I. *Id.* at 599–600. The *Patterson* Court addressed the issue, raised here, that "the lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Id.* at 600, *citing Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). However, the *Patterson* Court stated that,

> the remedy for the unfairness is an *in camera* examination by the trial court of the withheld documents and any support or explanatory affidavits. *Id.*

Here, the Court conducted an *in camera, ex parte* hearing *on the record* in order to consider all support or explanation by Defendants, while still attempting to protect the rights of the Plaintiffs.

In *Arieff, supra,* the Plaintiff claimed that even if the *in camera* affidavit was proper, the Court should have allowed the affidavit to be examined by Plaintiff's counsel and expert under an appropriate protective order. The Court stated that refusal to disclose an *in camera* submission, even under such a protective order, is within the Court's discretion. *Arieff, supra* at 1469; *citing Yeager v. DEA,* 678 F.2d 315, 324 (D.C.Cir.1982). The Court commented that allowing Counsel and experts to examine the *in camera* submissions would strain the attorney-client relationship, "introduce additional complexity and uncertainty," "color public perception of the security of confidential information in government files" and frustrate the purpose of the FOIA exemptions. *Arieff* at 1470. The *Arieff* Court expresses some discomfort with *ex parte* proceedings, as it goes against our common law principles, but went on to state,

> ... One party knows the contents of the withheld records while the other does not; and the Courts have been charged with the responsibility of deciding the dispute without altering that unequal condition, since that would involve disclosing the very material sought to be kept secret. That task

---

3. The Freedom of Information Act, 5 U.S.C. § 552, allows individuals to obtain government information. However, it also provides exemptions for the purpose of safeguarding information that should not be revealed.

4. The Court of Appeals noted that the District Court has the duty to make a determination after reviewing the fullest record offered by the proponent of the exemption (or privilege).

can often not be performed by proceeding in the traditional fashion . . .

*Id.* at 1471.

Notwithstanding ample legal authority to conduct the hearings in the absence of Plaintiffs' counsel, but with suitable safeguards permitting full appellate review, the matter was remanded for the purpose of an " . . . adversary hearing regarding Defendants' claims of qualified privilege over the documents at issue and to fashion an appropriate protective order for purposes of this hearing." *Lumumba v. Holvey,* No. 91–3884, at 9 (D.N.J. filed Aug. 4, 1993). In addition, upon the motion for clarification, the District Court permitted Plaintiffs' counsel to listen to the audio tapes of the hearings, although it did not permit review of the documents.

Thereafter, upon the present motion to examine documents, the Court, with the agreement of counsel, conducted a hearing which permitted Plaintiffs' counsel to cross-examine any witness testifying at the previous hearings, present his own witnesses, and renew his arguments for disclosure of the documents. The Plaintiffs declined to call any new witnesses, but cross-examined Ronald Holvey and renewed argument for general disclosure of the documents.

Courts have also relied upon *in camera* affidavits when determining dispositive motions. *See Arieff, supra; Molerio v. F.B.I.,* 749 F.2d 815 (D.C.Cir.1984). This Court believes that affidavits, sworn written statements, are similar to testimony, sworn oral statements. An *in camera* proceeding was used here, like the Courts in *Arrington* and *Southard,* to make determinations, based upon all available information, as to whether the documents found in the prison Internal Affairs files were privileged.

The Court in *Arieff,* like the District Court here, was uncomfortable with the use of *ex parte* proceedings, as it may appear to be contrary to the fundamental nature of the adversary process. However, this Court believes, as the *Arieff* and *Patterson* Courts did, that an *ex parte* proceeding was necessary to determine whether the documents were privileged without destroying the very privilege that the Court was charged with protecting, if applicable. Furthermore, un-

like the Court in *Southard,* this Court provided a record of the proceedings which can be reviewed, thus installing an essential safeguard to protect Plaintiffs' interests.

The Court also notes that *Arieff* and *Southard* both involved criminal charges, which generate many constitutional protections provided to alleged criminal defendants, and yet, *in camera* proceedings were still utilized. This case involves civil claims, and although this Court is necessarily concerned with protecting the constitutional rights of these litigants, no greater protection should be afforded to civil Plaintiffs then to criminal Defendants.

Moreover, this Court utilized an *ex parte, in camera* proceeding to resolve a discovery dispute, and not determine the merits of the case by dispositive motion or trial. This Court has previously held that Defendants must produce all documents they will rely upon at trial, in accordance with the Memorandum and Order filed November 3, 1993.

Safeguards were previously instituted to protect Plaintiffs interests, in the context of a discovery dispute, without destroying the privilege asserted.

Notwithstanding the above, the Court has attempted to fully comply with the remand order of the District Court by permitting Plaintiffs' counsel to call his own witnesses, to cross-examine Defense witnesses previously presented, and to make further argument on disclosure.

### B. Motion to Examine Certain Documents

■ The Plaintiffs seek to examine certain documents in question so as to "properly conduct cross-examination." Counsel relies upon the general language of the remand order which provided for an "adversary hearing" and upon *Fed.R.Evid.* 612.

*Fed.R.Evid.* 612 provides that:

. . . . if a witness uses a writing to refresh his memory for the purpose of testifying

. . .

. . . an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon,

and to introduce in evidence those portions which relate to the testimony of the witness ...

Plaintiffs' reliance on Rule 612 is entirely misplaced. Rule 612 pertains to documents that are used to refresh a witness' recollection. Here, when the hearings are considered as a whole, and limited testimony not taken in isolation, it is clear that the witness is not relying upon any of the documents to refresh his recollection, but is only referring to them to describe the nature of the documents and precisely why they should be considered privileged.

Rule 612 should not be viewed as a device which may be used to destroy the proper assertion of a privilege. *See Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 679 (S.D.N.Y.1983) (*quoting* legislative history that "The Committee intended that nothing in the Rule be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his recollection." *See* 3 J. Weinstein and M. Berger, Weinstein's Evidence 612–34).

Indeed, the Third Circuit Court of Appeals, also in a discovery dispute, points out that Rule 612 is "a rule of evidence, and not a rule of discovery." *Sporck v. Peil,* 759 F.2d 312, 317 (3d Cir.1985). The Court further found that proper application of Rule 612 should never implicate information the Court found to be protected by, in that case, the attorney work product privilege. *Id.* at 318.

Finally, here, the witness was testifying at the direction of the Court, where he was questioned by Plaintiff's counsel about documents previously found to be privileged. It has been held that where a witness has not voluntarily waived privileged documents in order to refresh recollection, justice would not require waiver of the privilege and disclosure of the documents. *Laxalt v. McClatchy,* 116 F.R.D. 438, 455 (D.Nev.1987).

Moreover, the Court in *Arieff, supra,* recognized that disclosure, even disclosure limited to only Plaintiffs' counsel and expert, strains the attorney-client relationship. Fur-

ther, this Court believes that such limited disclosure will necessarily dry up the flow of essential confidential information.

The remand order states that the "Magistrate Judge is requested to hold an adversary hearing regarding Defendants' claim of qualified privilege over the documents at issue and to fashion an appropriate protective order for purposes of this hearing." *Lumumba v. Holvey,* 91–3884 (AET) at 9 (D.N.J. filed Aug. 4, 1992). In its clarification order, the District Court, by refusing to permit Plaintiffs' counsel to examine the documents themselves, acknowledged, at least implicitly, that disclosure would defeat the privilege itself. In response to the remand, the Court permitted the Plaintiffs to call their own witnesses, cross-examine Mr. Holvey (although it did not permit disclosure to use in cross-examination), and present argument.

Finally, the Court is mindful of the distinction between a right to discovery and a right to be confronted with evidence and believes that different considerations should be made in determining whether disclosure should be made. Basically, this Court realizes that disclosure of the documents, even for this limited purpose, would defeat the privilege itself.

*C. Privilege/Disclosure*

█ Both parties agree as to the law applicable to an assertion of the state secrets privilege.[5] The state secrets privilege protects official information from disclosure if disclosure might otherwise endanger the public interest. *See United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *see also Kerr v. United States District Court,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). The privilege has been extended to protect prison documents. *See Calloway v. Fauver,* 544 F.Supp. 584 (D.N.J. 1982). The Court must determined whether or not the sought after information is privileged, and must make such a determination "without forcing a disclosure of the very thing the privilege is designed to protect." *Reynolds, supra* 345 U.S. at 8, 73 S.Ct. at

---

**5.** The parties agree that the privilege as applied to this case is a qualified privilege although they continue to disagree as to whether it should be

referred to as the state secrets privilege or the official information privilege.

532. In order to determine whether to uphold this qualified privilege, the Court must balance the public interest in protecting the confidentiality of the information against the need for the discovery sought. *Id.* at 11, 73 S.Ct. at 533–34; *see generally, United States v. O'Neill,* 619 F.2d 222, 227 (3d Cir.1980) (executive privilege); *Riley v. City of Chester,* 612 F.2d 708, 716 (3d Cir.1979).

In the Court's Memorandum and Order filed November 25, 1992, the Court found, after reviewing extensive intelligence materials (including reports of confidential informants) *and* considering the fullest justification offered by the proponent of the privilege, that,

> ... any disclosure, intentional or otherwise, of this information would present a clear and present danger to individuals both inside and outside the prison community.
>
> Having reviewed the material sought, the Court is uncertain as to its helpfulness to the Plaintiffs' case. Nonetheless, it is the Court's finding that any consideration of need for this discovery is vastly outweighed by considerations of danger to the public interest and considerations of confidentiality as a vital element in securing necessary information.[6]

*Lumumba v. Holvey,* No. 91–3884 (AET) at 12 (D.N.J. filed Nov. 25, 1992).

The proceedings subsequent to the remand order have not persuaded the Court to alter its original findings. Examination of the documents together with the amplification by way of sworn testimony (including cross-examination by Plaintiffs' counsel) compel the Court to find that the interests of the Defendants in maintaining confidentiality far outweigh any possible need of the Plaintiffs for the material. Plaintiffs have failed to provide any reasonable basis upon which the Court could conclude that disclosure would not curtail the effective flow of confidential information within the prison, through informants and otherwise. It is further abundantly clear to this Court that without such information, prison security would be jeopardized and some form of deadly violence would surely erupt. Conversely, Plaintiffs' counsel has conceded on two occasions[7] that there is no need for these documents to prove a prima facie case of discrimination. Rather, Plaintiffs seem to confuse the need for discovery with the right to be confronted with evidence against them at an adjudication on the merits, by acknowledging that the real need for such material is to defeat an expected claim by Defendants that assignment to the MCU is not discriminatory but because each Plaintiff is a threat to the security of the prison.

Plaintiffs argue that the Internal Affairs files contain material publicly available, material obtained from the prisoner himself, and material released through discovery in criminal cases. As such, Plaintiffs claim that the material should not be protected. If such material is obtainable by the prisoner through other means then the need for it is further diminished. On the other hand, if the person asserting the privilege can articulate a reasonable basis, directly relating to prison security, for withholding the item, then the outweighing need for confidentiality has been demonstrated. The Court finds that the Defendants have satisfied this burden. At the March 28, 1994 hearing, Mr. Holvey testified that he reviewed, item by item, all Internal Affairs files to determine whether each document therein was confidential. He has articulated a rational basis for each document, no matter how innocuous (*e.g.,* photos of Nelson Mandella), being classified as confidential. The Court finds that each such document, when reviewed in the context of assembling intelligence materials, relates to prison security.

The essence of the privilege, as asserted here, is that, although the document in isolation may be innocuous, the fact that it is part of the Internal Affairs file makes it confidential. Put another way, if inmates learn that disclosure of *any* contents within

---

**6.** See, particularly but not exclusively, testimony of Mr. Hilton, pp. 10–14, hearing transcript of Oct. 21, 1992.

**7.** At oral argument on October 18, 1993, and February 7, 1994, Plaintiffs' counsel stated, in essence, that he had sufficient evidence to proceed in his case-in-chief.

an Internal Affairs' file is permitted, the security of the prison is threatened.

Plaintiffs assert that just because materials are in Internal Affairs files, it should not prevent disclosure. Mr. Holvey testified that the materials were placed in such a file in the ordinary course of business and in advance of (and not in response to) the instant litigation. Mr. Holvey further testified that these files were most responsive to Plaintiffs particular document requests. If the Court were to require disclosure, the Defendants would only be required to respond in the manner the files are kept, *i.e.* files of Internal Affairs. Federal Rule of Civil Procedure 34(b) provides that parties producing documents shall only be required to produce them "as they are kept in the usual course of business."

■ Finally, Plaintiffs have argued for an "eyes only" protective order which would allow only counsel to view the material and, thus, obviate any of those dangers expressed by Defendants. Previously, the Court found that disclosure, even if limited to counsel would, according to prison authorities, dry up confidential information if inmates became aware of even this limited disclosure. Plaintiffs have offered no evidence, other than speculation, to contradict this finding.

Moreover, any "eyes only" protective order, in the context of this case where the Plaintiffs themselves may be the only ones able to decipher the material for counsel, would create serious attorney-client problems. This Court shares the same concerns as the *Arieff* Court, (discussed *supra* at P. 228), that an "eyes only" protective order may strain the attorney-client relationship and create public distrust in the government's ability to keep confidential government documents confidential.

In addition, the precedent of an "eyes only" order has the potential of creating claims of discrimination in cases where the attorney in another case is perhaps not as trustworthy as Plaintiffs' attorney here, or where disclosure is made in cases where *pro bono* counsel has been appointed but not where the plaintiff is appearing *pro se.* By

instituting such a precedent, the Courts will be faced with either appointing counsel to all *pro se* Plaintiffs in similar cases, or releasing confidential documents to all *pro se* litigants, where appointment of counsel has been denied.

Accordingly, the Court finds that the material sought is protected by the states secret privilege and that an "eyes only" protective order is not appropriate given the peculiar circumstances of this case.

### D. Prior Order Requiring Disclosure for Trial

Previously, Plaintiffs moved *in limine* to bar Defendants from offering evidence, not subject to disclosure by virtue of an assertion of privilege, at trial or summary judgment. Plaintiffs further moved to exclude any *ex parte* submissions of evidence. In its Memorandum and Order filed November 1, 1993, the Court ordered that Defendants will either waive the privilege and produce the requested information within the discovery period, or be barred from using undisclosed information at trial or at summary judgment. However, if the Defendants release information beyond the discovery period, Defendants will be permitted to use the newly released information upon a showing of good cause.

The Court also determined that, at this stage of the litigation, it was unable to grant an unconditional ban on *ex parte* submissions. The Court further ordered that Defendants are "presumptively precluded from submitting *ex parte* evidence in relation to a dispositive motion practice or at trial." *Pack v. Beyer,* 157 F.R.D. 219 (D.N.J.1993). To overcome this presumption, Defendants must show that preclusion of such *ex parte* evidence will result in a miscarriage or "mockery" of justice. *See Molerio v. F.B.I.,* 749 F.2d 815, 1825 (D.C.Cir.1984).[8]

Similarly, state courts have permitted disclosure, to attorneys only, to resolve the merits of a case (as opposed to permitting open ended discovery). *See Pridgen v. Beyer,* Docket No. A–6305–90T2 (App.Div. filed Dec.

---

8. The Court notes that no appeal was taken from the Memorandum and Order filed Nov. 3, 1993, and thus, the orders contained therein continue to be the law of the case.

29, 1992) (However, Judge Skillman noted that the materials disclosed did not refer to Mr. Pridgen or directly refer to the ANU).

The time for ultimate disclosure in this case has come. Claims by the Defendants that depositions have not been completed are illusory. These Plaintiffs have a right to know why they are in the MCU and they have a right to confront those reasons in front of a factfinder at trial or in front of a court at a dispositive motion stage. Accordingly, Defendants shall disclose those documents which they intend to rely upon at trial or at summary judgment motion or shall be barred from using such materials. If Defendants believe that they can overcome, in good faith, the presumption in favor of preclusion, *i.e.* whether non-reliance will result in a miscarriage of justice, they will be permitted to present such information in affidavit form and in *ex parte* fashion to the District Court.

## IV. CONCLUSION

The Court has permitted Plaintiffs to present witnesses (declined), cross-examine defense witnesses (only Mr. Holvey by choice), and present further argument on disclosure of the questioned documents in an effort to comply with the remand order of the District Court.

The Court did not permit disclosure of documents to use in cross-examination of Mr. Holvey because it found *Fed.R.Evid.* 612 to be inapplicable to the unique purpose of this hearing and because disclosure, even for this limited purpose, would defeat the privilege itself.

The Court, after reconsideration of the issue, finds that the state secrets privilege is properly asserted because any individual need for the material is vastly outweighed by the public need for confidentiality. Simply put, if inmates know what Internal Affairs knows, they can accommodate their conduct and the security of the prison will be jeopardized. Moreover, the mere knowledge, among the inmate population, that disclosure has been made, even if only to attorneys, will necessarily dry up essential confidential information.

The Court has found that Plaintiffs are not entitled to open-ended discovery in the face of the appropriate assertion of the state secrets privilege. However, Plaintiffs are entitled to know the reasons why they are in the MCU, through ultimate disclosure of documents, and thereby, engender final adjudication of this most difficult case.

This Court continues to believe that the dilemma between a prisoner's right to know (like any citizen's right) precisely why his or her liberty has been restrained and the public's right to a secure prison community can best be resolved by "the independent and impartial federal judicial review of the information which supports the institutional action about which the Plaintiff complains." *Lumumba v. Holvey,* 91–3884(AET) at 30 (Filed Nov. 25, 1992).

Regrettably, the United States of America, a model for individual freedom, has a higher percentage of its population behind prison bars than any other country in the world. Nevertheless, our system of justice mandates that prison authorities, and the public they serve, must ultimately be held accountable, in the courts, for the manner in which they treat and house individual prisoners.

Accordingly,

### ORDER

IT IS on this 4th day of April, 1994,

ORDERED that Plaintiffs' motion to examine documents for purposes of the remand hearing is denied; and it is

FURTHER ORDERED that Plaintiffs' renewed motion for disclosure of documents found to be protected by the state secrets privilege is denied; and it is

FURTHER ORDERED that Plaintiffs' renewed motion for an "eyes only" protective order is denied; and it is

FURTHER ORDERED that Defendants, in conformity with the Order filed November 3, 1993, shall disclose documents they intend to rely on at trial or at summary judgment proceedings within thirty (30) days of the date of this order; and it is

FURTHER ORDERED that the within orders are hereby stayed pending any appeal to the District Court.