**Dan M. NORWOOD, Plaintiff,**

v.

**FEDERAL AVIATION ADMINISTRATION, Defendant.**

**No. 83–2315–H.**

United States District Court, W.D. Tennessee, W.D.

Dec. 15, 1983.

On Motion for Clarification and Reconsideration Jan. 27, 1984.

Dan M. Norwood, pro se, of Byrd, Cobb, Norwood, Lait, Dix & Babaoglu, Memphis, Tenn., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., W. Hickman Ewing, Jr., U.S. Atty., Memphis, Tenn., Barbara L. Gordon and Harriet Kerwin, Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HORTON, District Judge.

Plaintiff Dan M. Norwood brought this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking to compel the Federal Aviation Administration (FAA) to release agency records concern-

ing settlements made and settlements offered to various persons who were terminated from their positions as air traffic controllers with the FAA because of the August, 1981, air traffic controllers strike. Plaintiff is currently representing over 170 former air traffic controllers in proceedings aimed at restoring those persons to their former positions with the FAA. This action, however, is totally separate from that lawsuit.

Defendant FAA contends that the information sought by plaintiff is protected from disclosure and has moved for summary judgment. Plaintiff opposes defendant's motion for summary judgment and has moved for partial summary judgment. The Court hereby enters this order denying defendant's motion for summary judgment and granting plaintiff's motion for partial summary judgment.

*Plaintiff's Request*

Specifically, plaintiff has requested that the FAA produce the following documents:

1) Copies of each and every individual settlement agreement, signed by the Appellant and the FAA, or similar document which sets forth in full each of the specific terms of the settlement in each case;

2) Copies of each original letter proposing removal sent to each named Appellant who was later offered a settlement;

3) Copies of each original letter setting forth the final decision of removal sent to each Appellant who was later offered a settlement;

4) Copies of any and all documents in the case of each Appellant whose case was settled which set forth the specific extenuating circumstances or reasons for entering into each settlement made and/or which make recommendation that settlement be offered, whether ultimately accepted or not, including each and every document which refers to or recounts a decision to offer a settlement made after a review of the individual's entire disciplinary file;

5) Copies of each and every case summary which was prepared in reference to each case in which a settlement was offered and/or entered;

6) Copies of any and all other letters or other documents pertaining to each offer of settlement;

7) Copies of each and every letter, document, memo or similar item which addresses the Agency's and the Government's position, policy, and/or plans for settlements with individual air traffic controllers and with former air traffic controllers as a group.

*Background*

■ The Freedom of Information "Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The Act is structured so that "virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975). The agency has the burden of establishing its right to withhold requested information from the public, and the agency must supply the court with sufficient information to allow the court to make a reasoned determination that the agency is correct. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980); 5 U.S.C. § 552(a)(4)(B).

*Exemptions Asserted by FAA*

The FAA contends that the information sought by plaintiff is protected by two exemptions under the Freedom of Information Act: (1) "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted in-

vasion of personal privacy" (5 U.S.C. § 552(b)(6)); and (2) "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" (5 U.S.C. § 552(b)(5)). The Court will address each exemption separately.

*Exemption 6—Personnel, Medical and Similar Files*

Exemption 6 protects from agency disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The FAA claims that the settlement agreements between the FAA and individual air traffic controllers terminated because of their participation in the August, 1981, strike, fall within exemption 6. The FAA further asserts that the letters of proposed removal and final letters of removal fall within exemption 6.

■ To establish grounds for nondisclosure under exemption 6, the FAA must show: (1) that the requested information is properly classified as a "personnel," "medical," or "similar" file; (2) that the release of the information would violate substantial privacy interests of those involved; and (3) that the privacy interest is not outweighed by the public interest in disclosure. *Shaw v. United States Department of State*, 559 F.Supp. 1053, 1067 (D.D.C. 1983). *See also Department of Air Force v. Rose*, 425 U.S. 352, 370–82, 96 S.Ct. 1592, 1603–08, 48 L.Ed.2d 11 (1976).

■ The FAA asserts that the settlement agreements contain the controller's name, the name of his/her attorney, the location of the controller's return to duty, the date of the agreement, and other personal identifying information including the docket number of the case, amount of back pay, amount of attorney's fees, amount of moving expenses, and adjustments to annual leave and seniority. The settlement agreement and the proposed letter of removal and final letter of removal are elements of the personnel file of each reinstated controller. Although the FAA cannot insulate these documents from disclosure

merely by storing them in personnel files, *Department of Air Force v. Rose*, 425 U.S. at 372, 96 S.Ct. at 1604, these documents do appear to be within the meaning of exemption 6. Exemption 6 has been construed to apply to "detailed Government records on an individual which can be identified as applying to that individual." *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 601–02, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982) (citation omitted). The Court finds that the proposed letters of removal, final letters of removal and settlement agreements are personnel or similar files within the meaning of 5 U.S.C. § 552(b)(6).

Having established that these documents are "personnel" or "similar" files, the Court must determine whether their release would violate substantial privacy interests of the controllers who were reinstated. The FAA contends that disclosure of the settlement agreements would embarrass the reinstated controllers, harm their reputations, and adversely affect their future employment opportunities. Since participation in the illegal strike could have subjected these controllers to criminal sanctions, the FAA contends that public disclosure of the settlement would violate substantial privacy interests of the controllers who were reinstated. The FAA also contends that to avoid conflicts between the controllers who settled, the controllers who did not strike, and the controllers who struck but were not reinstated, many of the controllers who settled were relocated and returned to work at a facility other than the one where they worked at the time of the strike. Making public the identity of those controllers who settled would, in the FAA's opinion, subject them to possible harassment or violence by controllers who were not reinstated or who did not participate in the strike.

The Court finds these arguments unpersuasive. As plaintiff points out, it is the fact that these controllers participated in the illegal strike that may cause them embarrassment or harm their future job opportunities, and the fact that they went on

strike and were reinstated is no secret. (In fact, plaintiff has a list of all those controllers who reached settlements with the FAA and were reinstated, although the FAA denies releasing this information to the public.) The illegal strike was highly publicized and those controllers who participated in the strike were engaged in a public job action, not in some secret or personal activity the public disclosure of which would affect a substantial privacy interest.

The FAA advances the argument that air traffic controllers nationwide are a closely knit group who freely communicate information about individual cases and who are frequently transferred from one location to another. Taking the FAA's assertions as true, the Court logically concludes that within the air controller community it is no secret that certain controllers reached settlements with the FAA and have been reinstated. While the public nature of information does not dictate a conclusion that the agency must produce such information, "[t]he public nature of information may be a reason to conclude, under all the circumstances of a given case, that the release of such information would not constitute a 'clearly unwarranted invasion of personal privacy.'" *United States Department of State v. Washington Post Co.,* 456 U.S. at 602 n. 5, 102 S.Ct. at 1962 n. 5.

The Court finds the FAA has failed to establish that release of these settlement agreements would violate substantial privacy interests of the reinstated air traffic controllers.

Even if the FAA had established that the release of the letters of proposed removal, final letters of removal and the settlement agreements would violate substantial privacy interests of the controllers who settled, the Court would still have to weigh that privacy interest against the public interest in disclosure. To successfully resist plaintiff's request, the FAA must show that release of the information would constitute a *clearly unwarranted* invasion of personal privacy. *United States Department of State v. Washington Post Co.,* 456 U.S. at 601, 102 S.Ct. at 1961 (emphasis added).

The basic purpose of the Freedom of Information Act is to open agency action to the light of public scrutiny. *See Department of Air Force v. Rose,* 425 U.S. at 372, 96 S.Ct. at 1604. The strike of over 11,000 air traffic controllers had a direct, pervasive impact on the American public; it was a matter of grave public concern and the subject of direct Presidential intervention. Certainly, there is a strong public interest in ascertaining whether the agency authorized to deal with the nation's aviation safety handled matters surrounding the strike in a fair and consistent manner. Nothing in the FAA's arguments has persuaded this Court that any privacy interests of the reinstated controllers could outweigh the public interest in disclosure of this matter.

The Court finds that the FAA has failed to establish that disclosure of the requested information is shielded by exemption 6 and therefore denies the FAA's motion for summary judgment on this issue.

*Exemption 5—Intra-agency memoranda not available in litigation*

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Under this exception the FAA contends that the following documents are protected from disclosure:

1. Case summaries evaluating the facts and circumstances underlying individual controller's appeals. These summaries were prepared by agency attorneys and contained the attorneys' characterization of the facts relevant to a controller's probable defenses and determinations as to the weight and credibility of these defenses. Handwritten notes of the Assistant General Counsel for Litigation in the air controller appeals are inscribed on these case summaries.

2. Copies of these case summaries with FAA attorneys' handwritten notes inscribed on them.

3. Numerous other documents that appear to be related to the above summaries. These documents are numbered

and listed in the affidavit of Diane Liff attached to the FAA's motion for summary judgment.

"Exemption 5 creates an exemption for such documents only insofar as they 'would not be available by law to a party ... in litigation with the agency.' This language clearly contemplates that the public is entitled to all such memoranda or letters that a private party could discover in litigation with the agency." *Environmental Protection Agency v. Mink*, 410 U.S. at 85–86, 93 S.Ct. at 835. In recognition of the need to promote frank and open discussion in the making of agency policy, exemption 5 is held to require "different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *Id.* at 89, 93 S.Ct. at 836–37 (footnote omitted). "[D]iscovery of purely factual material appearing in ... documents in a form that is severable without compromising the private remainder of the document" is to be compelled. *Id.* at 91, 93 S.Ct. at 837–38.

 In addition to holding that factual information contained in intra-agency memos is discoverable, the Supreme Court has held that "final dispositions" of matters by an agency can never be exempt under exemption 5. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. at 153–54, 95 S.Ct. at 1517–18. The FOIA represents a strong Congressional aversion to an agency's making a body of secret law through its use of non-disclosed statements of policy, opinions and instructions to staff. To prevent such a body of secret law from being applied to an unknowing public, the FOIA commands that an agency's final disposition of a case must be made available to the public. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. at 159–61, 95 S.Ct. at 1520–21. It seems clear that the FAA cannot use exemption 5 to withhold production of the settlement agreements themselves, since the settlement agreements represent the final disposition of an agency case.

██ The FAA also invokes attorney's work-product under exemption 5 to protect documents containing notes by attorneys regarding the strengths and weaknesses of various controller's cases. "Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. at 154, 95 S.Ct. at 1518 (citations omitted). It appears from the FAA's affidavit that the handwritten notes inscribed on case summaries are protected from production by exemption 5. But, the case files from which summaries were prepared may not be subject to the same protection. Since exemption 5 will not protect factual material contained within intra-agency memos, the case summaries minus the handwritten notes may not be protected by exemption 5. The FAA has not demonstrated that the case files or the summaries themselves, absent the attorneys' handwritten notes, are protected by exemption 5. The Court denies the FAA's motion for summary judgment on this issue.

*Plaintiff's Motion for Partial Summary Judgment*

When an individual air traffic controller filed an appeal of removal with the Merit Systems Protection Board, an adverse action file (also called a disciplinary file) was created by the appropriate FAA Regional Counsel's office. Plaintiff contends that his FOIA request encompassed the "adverse action file" of each reinstated controller and has moved for partial summary judgment on this issue. The FAA contends that plaintiff's FOIA request did not make reference to adverse action files and that such files are not within the materials described in plaintiff's request.

Among the information requested by plaintiff were "copies of any and all documents in the case of each Appellant whose case was settled which set forth the specific extenuating circumstances or reasons for entering into each settlement and/or which make recommendation that settlement be

offered, whether ultimately accepted or not, including each and every document which refers to or recounts a decision to offer a settlement made after a review of the individual's disciplinary file." The Court finds that this request does include adverse action files.

"A FOIA request should not require the specificity and cunning of a carefully drawn set of discovery requests, so as to outwit narrowing legalistic interpretations by the government." *Providence Journal Co. v. F.B.I.*, 460 F.Supp. 778, 792 (D.R.I. 1978), reversed on other grounds, 602 F.2d 1010 (1st Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980). Where, as here, the requestor has endeavored to carefully specify what documents were being requested, the Court will not allow an agency's quibbling to obscure the issues. Since the adverse action files contain the controller's appeals from adverse action by the Merit Systems Protection Board, the Court assumes that they contain the reasons why these controllers believed they should have been reinstated. Thus, the Court finds that the adverse action files are "documents which set forth extenuating circumstances or reasons for entering each settlement." The Court therefore grants plaintiff's motion for partial summary judgment by finding that plaintiff's FOIA request includes the adverse action files of those controllers who settled with the FAA.

*Conclusion*

Defendant's motion for summary judgment on the grounds that the requested information is exempt by exemption 6 (personnel and similar files) and exemption 5 (inter-agency, intra-agency memoranda) is denied. Plaintiff's motion for partial summary judgment on the issue that plaintiff's FOIA request includes a request for the adverse action files of those controllers who reached settlement agreements with the FAA is granted.

ON MOTION FOR CLARIFICATION
AND RECONSIDERATION

On December 15, 1983, this Court filed an order denying defendant Federal Avia-tion Agency's (FAA) motion for summary judgment and granting plaintiff Dan Norwood's motion for partial summary judgment. The FAA has filed a Motion for Clarification and Reconsideration of the December 15th order. In response to the FAA's motion the Court files this supplemental order.

The action is brought under the Freedom of Information Act; the factual background was set out in the previous order and will not be repeated here. The FAA moved for summary judgment on grounds that the documents sought were exempt from disclosure under 5 U.S.C. § 552(b)(6) personnel, medical and similar files, and 5 U.S.C. § 552(b)(5) inter-agency or intra-agency memorandums not available by law to a party other than an agency in litigation with the agency. To prevail on its motion for summary judgment, the FAA must prove there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. F.R.C.P. 56(c).

1. *Exemption 6: Personnel, Medical and Similar Files*

■ The Court finds the FAA has not proved that *any* document listed on the Liff Affidavit/Index falls within exemption six. Although some of the documents sought qualify as personnel or similar files, the Court holds the FAA has not shown that their release would violate substantial privacy interests of the controllers who were reinstated. The Court further holds that, even if the release of the documents would violate substantial privacy interests of those involved, the FAA has not shown that such a violation would be clearly unwarranted.

2. *Exemption 5: Attorney-Client Privilege*

■ The FAA contends that portions of numerous documents are exempt under attorney-client privilege as allowed by exemption five. The attorney-client privilege is properly within the scope of exemption five. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44

L.Ed.2d 29 (1975); *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 252–54 (D.C.Cir. 1977) [hereinafter *Mead Data* ]. To demonstrate that the attorney-client privilege justifies withholding documents, the FAA must establish that "the information in those documents was communicated to or by an attorney as part of a professional relationship in order to provide the [FAA] with advice on the legal ramifications of its actions." *Mead Data,* 566 F.2d at 253. Attorney-client privilege does not, however, permit withholding documents merely because they are the product of an attorney-client relationship; the FAA must also show that the information is confidential. *Id.* The Court finds the FAA has not shown that the documents it seeks to withhold are based on information supplied to its attorneys by the FAA with the expectation of secrecy and not known by or disclosed to any third party. *Brinton v. Department of State,* 636 F.2d 600, 603–604 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

### 3. *Exemption 5: Deliberative Process Privilege*

 The deliberative process component of exemption five generally exempts from disclosure "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." 15 Fed.Proc. L.Ed. § 38:98 (citing *NLRB v. Sears, Roebuck & Co., supra* ). While there is a great deal of overlap between documents exempt under attorney client privilege and those exempt under deliberative process, the distinction between them has been elucidated by the District of Columbia Circuit Court of Appeals.

With respect to documents containing legal opinions and advice, there is no doubt a great deal of overlap between the attorney-client privilege component of exemption five and its deliberative process privilege component. The distinction between the two is that the attorney-client privilege permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts, while the deliberative process privilege directly protects advice and opinions and does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process.

*Mead Data,* 566 F.2d at 254 n. 28. The Court finds the FAA has not met its burden of proving that factual materials contained in the documents for which it claims deliberative process privilege are so inextricably intertwined with the agency's deliberative processes as to be inseverable.

### 4. *Exemption 5: Attorney Work Product*

 The attorney work product prong of exemption five protects from disclosure memoranda which are prepared by an attorney in contemplation of litigation and which set forth the attorney's theory of the case and litigation strategy. *NLRB v. Sears, supra.* If, however, attorney work product documents contain segregable factual material, then those segregable factual materials are not exempt from disclosure by exemption five. The Court recognizes that "material which might disclose an attorney's appraisal of factual evidence is attorney work-product exempted from disclosure by exemption 5." *Mervin v. Federal Trade Commission,* 591 F.2d 821, 826 (D.C.Cir.1978). The Court finds, however, that except for the FAA attorneys' handwritten notes on case summaries, the FAA has not met its burden of proving that the withheld documents are exempt as nonsegregable attorney work product.

### 5. *Settlement Negotiation Exception*

 The FAA has argued that some requested documents are exempt under the "long recognized settlement negotiation privilege embodied in exemption five." The Court finds the Freedom of Information Act contains no express settlement negotiation privilege and the Court will not imply one. In *County of Madison, N.Y. v. United States Department of Justice,* 641

F.2d 1036 (1st Cir.1981), the First Circuit Court of Appeals was faced with a FOIA request for letters from the Department of Justice to attorneys for the Oneida Indian Nation. These letters discussed settlement of a pending suit brought by the Oneida Indians against the United States. The FOIA request for these letters was initiated by attorneys for Madison County, which was being sued by the Oneida Indians in a separate action. The Department of Justice asserted that the letters were protected by exemption five, but the district court found to the contrary. The district court did, however, hold that basic public policy considerations justified creation of a "settlement exemption" protecting the letters from disclosure. On appeal the First Circuit agreed with the trial court that the letters were not exempt as inter-agency or intra-agency memos. The court of appeals then reversed the district court's public policy ruling and held that "the explicitness of the FOIA's statutory exemptions overrides [the court's] traditionally unbounded equitable discretion [to create additional exemptions] ... Whatever may be thought to be sound public policy should be up to Congress.... [W]e therefore decline the government's invitation to create a broad-ranging 'settlement exemption.'" *County of Madison, N.Y. v. United States Department of Justice*, 641 F.2d at 1041 (footnote omitted).

This Court holds that based on the situation here presented none of the withheld documents are protected by any "settlement negotiation" privilege.

*Conclusion*

Congress designed the Freedom of Information Act expressly to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose v. Department of the Air Force*, 495 F.2d 261, 263 (2d Cir.1974) *aff'd.* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The Court has carefully read and considered the briefs and affidavits presented by both parties. Based on this careful consideration, the Court reiterates its previous denial of the FAA's motion for summary judgment. The Court finds, based on the evidence before it, there are genuine issues of material fact regarding the application of exemptions five and six to the documents sought by plaintiff. The defendant therefore is not entitled to summary judgment.

The Court denies the FAA's belated request for *in camera* inspection of documents in connection with defendant's motion for summary judgment.