**Dan M. NORWOOD, Plaintiff–Appellee,**

v.

**FEDERAL AVIATION ADMINISTRATION, Defendant–Appellant.**

**No. 92–5820.**

United States Court of Appeals, Sixth Circuit.

Argued March 16, 1993.

Decided May 21, 1993.

As Amended on Consideration of Petition for Rehearing with Suggestion for Rehearing En Banc July 9, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 12, 1993.

---

Dan M. Norwood, argued and briefed, Memphis, TN, for plaintiff-appellee.

Daniel A. Clancy, U.S. Atty., Robert M. Williams, Jr., Asst. U.S. Atty., Office of the U.S. Attorney, Memphis, TN, Leonard Schaitman, U.S. Dept. of Justice, Appellate Staff, Civil Div., Stuart M. Gerson, U.S. Dept. of Justice, Civil Div., Robert V. Zener, argued and briefed, Dept. of Justice, Appellate Staff, Civil Div., Elizabeth A. Pugh, Christopher P. Tuite, Mark B. Stern, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendant-appellant.

Before MARTIN and NORRIS, Circuit Judges, and COFFIN, Senior Circuit Judge.*

COFFIN, Senior Circuit Judge.

This appeal arises out of the efforts of some 200 air traffic controllers fired for participating in a 1981 strike to obtain Federal Aviation Administration files on other controllers who were reinstated through settlement. The district court rejected most of FAA's justifications for withholding information under the Freedom of Information Act's exemptions for matters of personal privacy, 5 U.S.C. § 552(b)(6), and for deliberative and attorney work product materials, *id.* at § 552(b)(5). We partly affirm and partly reverse.

---

* The Honorable Frank M. Coffin, Senior Circuit Judge of the United States Court of Appeals for the First Circuit, sitting by designation.

## Background

In August of 1981 some 11,000 air traffic controllers participated in a strike by the Professional Air Traffic Controllers Organization (PATCO) against the United States. Such conduct constitutes not only a felony, 18 U.S.C. § 1918, but cause for termination of federal employment, 5 U.S.C. § 7311. Very promptly, all controllers were removed. Virtually all appealed their removals to the Merit Systems Protection Board (MSPB). Thereupon FAA reacted to each case, creating "adverse action files" of data and recommendations, and files relating to settlement. Several hundred controllers won their appeals and were ordered reinstated. Another 123 settled their cases during the appeals process and were reinstated. According to FAA, it "reinstated those it believe[s] did *not* willingly strike, but stayed out because of coercion or valid personal reasons." FAA Brief at 14 (emphasis in original).

A group of some 200 controllers who neither won their appeals nor settled have retained plaintiff as their attorney to pursue their interests. In this case, wholly separate from other litigation, plaintiff seeks information about the factors and reasoning that brought about the settlements and reinstatements. In the interest of monitoring FAA's performance of an important function, he is seeking any evidence of arbitrariness, nepotism, favoritism, or other improper motivation during the settlement process.

Plaintiff filed a broad request under the Freedom of Information Act (FOIA), asking, insofar as is relevant to this appeal, for all documents relating to policy, plans, and offers of settlement, including

[c]opies of any and all documents in the case of each Appellant whose case was settled which set forth the specific extenuating circumstances or reasons for entering into each settlement made and/or which make recommendation that settlement be offered....

Copies of each and every case summary which was prepared in reference to each case in which a settlement was offered and/or entered.

App. at 14.

Satisfactory response not being forthcoming, plaintiff filed suit on April 13, 1983.

Thereupon ensued an eight-year period of tedious, detailed, unstructured and unprioritized comments on hundreds of documents in five separate "declarations" of the Assistant General Counsel for Litigation of the Department of Transportation. FAA began by turning over a "typical" settlement agreement, a standard notice of removal, and a standard removal letter. In its first declaration, it commented on some 555 documents, explaining its reasons for redacting or withholding disclosure. For example, it redacted from the final settlement agreements with the 123 reinstated controllers "the names of each controller and his/her attorney, the location of the controller's return to duty, the date of the agreement, and other personally identifying information, including MSPB docket number, amount of back pay, amount of attorney's fees, amount of moving expenses, and adjustments to annual leave and seniority." App. at 77.

FAA balked at turning over "adverse action files" that were created for each controller who appealed his removal. These files included a response to issues raised by an appellant, any grievance against the agency, the appellant's written or "personal" reply to the proposed adverse action, and the "[e]vidence supporting the action taken." Third Declaration, Exhibit A. The agency, in its Second Declaration, argued that this material did not fall within the FOIA request for documents setting forth "specific extenuating circumstances or reasons for entering into a settlement." It argued that these files were disciplinary files, not directly connected to the settlement process. Second Declaration, ¶¶ 11, 12.

The district court ruled to the contrary in its first order, on December 15, 1983. It also ruled that the privacy interests in the settlement agreements, notices of removal, and final letters of removal were so attenuated that there was no violation of any substantial privacy interest, but that even if there were, such invasion was not "clearly unwarranted." Finally, it addressed FAA's claim that case summaries should be protected from disclosure under Exemption 5, which covers "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with

the agency." 5 U.S.C. § 552(b)(5). 580 F.Supp. 994.

In more concrete terms, this exemption covers material revealing an agency's deliberative process and attorney work product. FAA described the case summaries as evaluations of controllers' appeals prepared by attorneys, characterizing facts and assessing probable defenses, with handwritten notes of attorneys inscribed on them. The court ordered the summaries, minus the handwritten notes, disclosed.

Shortly thereafter, responding to a motion for clarification, the court broadened its privacy (Exemption 6) ruling by applying it to all 555 documents listed in the First Declaration, holding that FAA had not shown that disclosure would violate substantial privacy interests or, in any event, be a clearly unwarranted invasion of such interests. It further explicated, but did not change its Exemption 5 ruling, by saying that FAA had not met its burden of showing that factual materials in the documents it claimed to be vested with the deliberative process privilege were so inextricably intertwined as to be inseverable. Finally, it denied what it termed "FAA's belated request for *in camera* inspection of documents."

Then followed a hiatus, insofar as court action is recorded, of almost eight years. FAA did produce some 5,000 documents, heavily redacted, from adverse action files, and filed a Third Declaration in May of 1984, describing in 96 paragraphs the nature of various kinds of documents found in the 123 files. A Fourth Declaration (with 99 paragraphs) followed a year later, and a Fifth, on August 13, 1985. Motions also had been filed—for summary judgment by both parties and for contempt sanctions by plaintiff.

On December 11, 1991 the district court issued four rulings. First, as it had ruled before, it held that FAA had not established that disclosure of the requested records would violate substantial privacy interests and that, even if they did, FAA had not established that they would outweigh the public interest. It therefore denied FAA's motion for summary judgment seeking protection under Exemption 6 from disclosure of the withheld portions of the adverse action files. There was to be no redaction, even of

names, to prevent or minimize the likelihood of identification.

Second, concerning deliberative process materials within the protection of Exemption 5, part of the adverse action files contained "agency summaries of the controller's oral response and/or the recommendations of the agency official as to the proposed removal." Order at 10. The court found protected "the portions of these documents which contain the FAA's analysis and recommendations." *Id.* at 11. It left unprotected "the factual portions of these documents." *Id.* at 11–13.

Third, the court referred to newly discovered documents described in five paragraphs of the Fourth Declaration as to which the attorney work product privilege had been argued. It ruled that FAA had failed to carry its burden of showing that the factual materials in these documents were nonsegregable. It made its ruling particularly applicable to case summaries. These had been described by FAA as one- or two-page case discussions, prepared by an FAA attorney, that evaluated facts and were used to assess the chances of prevailing in further litigation.

Fourth, the court reiterated its refusal to inspect documents *in camera,* citing *Ingle v. Department of Justice,* 698 F.2d 259, 264 (6th Cir.1983) (indicating reluctance to hold such reviews except in cases where a very limited number of documents is involved).

### Discussion

 *Ground Rules.* We begin our analysis by acknowledging the basic ground rules. The basic goal of the Freedom of Information Act is to open up agencies to public scrutiny. *Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). Exemptions are to be narrowly construed. *Id.* at 361, 96 S.Ct. at 1599. And the government must carry the burden of proving the applicability of an exemption. *Department of State v. Ray,* —— U.S. ——, ——, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991); *Ingle,* 698 F.2d at 264.

Although the standard of review applicable in this case was not briefed or argued, FAA has not contended that the summary judgment rulings should be set aside because there were genuine issues of material fact to be resolved. Instead, we understand it to

argue that the district court erred as a matter of law in its rulings on privacy, the deliberative process, and attorney work product.

■ *Exemption 6—Privacy.* This exemption from mandatory disclosure covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We begin by assessing the nature and weight of the privacy interest and then balance that against the public purpose served by disclosure to see if disclosure would constitute a "clearly unwarranted" invasion. *Ray,* —— U.S. at —— – ——, 112 S.Ct. at 548–49; *Schell v. Department of Health and Human Services,* 843 F.2d 933, 937–38 (6th Cir.1988).

■ FAA set forth its perception of the privacy interests of the controllers who were reinstated through settlement agreements in six substantially identical paragraphs in both the First and Third Declarations. The six paragraphs boil down to two factors: (1) the potential embarrassment and jeopardy to future employment that controllers might face from publicity of their involvement in a strike, which also was a felony; and (2) the potential harassment and distrust that might be directed at them by fellow controllers. No particulars were cited to indicate that these hazards were realistic more than a decade after the event. In fact, the names of all 123 settled returnees have been revealed (a) in a submission to a Congressman who was involved in considering proposed legislation, (b) in an exhibit submitted to the court by plaintiff, and (c) in the publicly available MSPB's dismissals of cases based on the settlements.

This does not mean that there is no remaining privacy interest in protecting identities. The Supreme Court has recognized a "privacy interest inherent in the nondisclosure of certain information even where the information may have been at one time public." *Department of Justice v. Reporters Committee for Freedom of Press,* 489 U.S. 749, 767, 109 S.Ct. 1468, 1778, 103 L.Ed.2d 774 (1989) (barring disclosure of FBI "rap sheets" of convicts' records of convictions where not germane to purpose served by public scrutiny of agency's operations). In his brief, plaintiff defines "identifying infor-

mation" to include "the controller's name, location, and perhaps social security number or other identifying number." Appellee's Brief at 5. He does not urge disclosure of this information, stating that what he "actually seeks is information about why the FAA rehired certain of the strikers and *not* the identity of the strikers." *Id.* at 8 (emphasis in original). Unquestionably, then, disclosure of plaintiff's category of "identifying information" would serve no public interest and therefore would constitute a "clearly unwarranted invasion of [the controllers'] privacy," *see Ray,* —— U.S. at ——, 112 S.Ct. at 543 (quoting 5 U.S.C. § 552(b)(6)).

FAA, however, takes a far more expansive view of identifying materials. In its Third Declaration, ¶ 15, it states its approach:

> Merely withholding the controllers' names is inadequate to protect their identities, since information regarding the facility, region, representative, addresses, etc. can be pieced together into an identifiable set of circumstances. Such piecing together of fragments of information into an identifiable whole is made even more likely by the existence of a closely knit, nationwide network of controllers. Thus, it is only possible to protect the identity of the settling controllers by withholding any and all information that can lead to identification thereof.

The sweep of this concept was made clear at oral argument where counsel for FAA defended its extensive redacting policy by saying that "[t]he problem is that the stories the controllers gave are very factual and in our view are identifying . . . ." Given this approach, we understand why plaintiff feels he has received very little, if any, relevant information in response to his request.

It seems to us that such a view of protecting privacy—excluding from disclosure any and all fragments of information that might assist a diligent researcher in identifying a person—is not supportable. The Supreme Court in *Rose,* 425 U.S. at 378, 96 S.Ct. at 1607, rejected nondisclosure based simply on the possibility that an item might trigger recollection of a person's identity. The exemption is directed at threats "more palpable" than mere possibility of identification. *Id.* at 380 n. 19, 96 S.Ct. at 1608 n. 19. The

District of Columbia Circuit has applied this teaching to distinguish a case in which items of information would "by themselves" identify a person, *Carter v. Department of Commerce*, 830 F.2d 388, 391 & n. 12 (D.C.Cir. 1987), from one in which the requested information has the "possibility" of supplying a "missing link" in the chain of identification. *Arieff v. Department of Navy*, 712 F.2d 1462, 1467 (D.C.Cir.1983).

The factual situation and arguments in the latter case are similar to those in the case before us. A journalist requested of the Office of Attending Physician (serving the Congress) the amounts of various drugs purchased over a number of years. Although the names of patients for whom the drugs were prescribed were deleted, the defendant resisted providing the information, arguing that disclosure would enable others to piece the information together with other fragments, arrive at a particular condition for which the drug was recognized treatment, and hence lead to an "informed speculation" about identity. *Id.* at 1466. Writing for the court, then Judge Scalia cited *Rose's* insistence on risks more palpable than mere possibility and declared that the possibility of constituting a "missing link" was insufficient to invoke the protection of Exemption 6. *Id.* at 1467. In like manner we discount, as did the district court, the probability of any invasion of privacy.

Looking at the other element to be balanced, the public interest that would be served by disclosure, the district court identified it as follows: "ascertaining whether the agency authorized to deal with the nation's aviation safety handled matters surrounding the strike in a fair and consistent manner." Order at 8 (quoting *Norwood v. FAA*, 580 F.Supp. 994, 999 (W.D.Tenn.1983)). This formulation fully accords with precedent: *Rose*, 425 U.S. at 372, 96 S.Ct. at 1604 (focus is the nature of the documentation and its

relation to the goal of opening agency action to scrutiny); *Hopkins v. Department of Housing and Urban Dev.*, 929 F.2d 81, 88 (2d Cir.1991) ("monitoring" accepted as a public interest); *Ripskis v. Department of Housing and Urban Dev.*, 746 F.2d 1, 3 (D.C.Cir.1984) (recognizing "the public interest in efficient and evenhanded personnel policies"); and *Arieff*, 712 F.2d at 1468 (recognizing monitoring as the core purpose of FOIA).

We conclude from our review of the record and authorities that the reinstated controllers' privacy interest in not being associated with an almost twelve-year-old strike is satisfied by redacting from requested material only those items which "by themselves" would identify the individuals. We hold that redaction should occur only with respect to names, present and pre-removal locations and addresses, and social security (and other similarly identifying) numbers.[1]

Contrary to the FAA's contention, the language of Exemption 6 does not provide a blanket exemption for personnel and medical files; it exempts those and similar files *only when* their disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). *See Rose*, 425 U.S. at 361, 96 S.Ct. at 1599 (FOIA exemptions must be narrowly construed). As noted earlier, that determination is made by balancing the public purpose in disclosure against the nature and weight of the privacy interest in nondisclosure. *Ray,* —— U.S. at ——, 112 S.Ct. at 548–49. In this particular case, medical and perhaps legal and financial information may bear on the reasons advanced by the controllers in their quest for a changed decision from FAA. Indeed, unless such information were relevant to a controller's defenses against removal, it would not properly be a part of an adverse action file. Therefore, disclosure of this information, with directly identifying data redacted, would not constitute a clearly unwarranted invasion of personal privacy unless the FAA demonstrated that the information was manifestly irrelevant to its decision in the particular case. *Ray,* —— U.S. at ——, 112 S.Ct. at 547

1. It may be that, in individual cases, the FAA could argue responsibly that information other than "those items which 'by themselves' would identify the individuals" should be withheld. The FAA has made no such particularized effort, relying generally on the claim that "fragments of information" might be able to "be pieced together into an identifiable set of circumstances." *See supra* at 574–75 (quoting Third Declaration, ¶ 15). This clearly is insufficient to support nondisclosure.

(government must carry the burden of proving the applicability of a FOIA exemption).[2]

With these changes we affirm the decision of the district court as to Exemption 6.

■ *Exemption 5—Attorney Work Product.* Exemption 5 of FOIA covers "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This language is interpreted to cover documents normally privileged when civil discovery is at issue, and includes materials protected by the "deliberative process" privilege and the attorney work product privilege. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975). We discuss first FAA's claim that case summaries merited protection under Exemption 5 as attorney work product.

■ In FAA's First Declaration, case summaries were described as follows:

[P]repared by FAA attorneys ..., [t]hey are one page in length, entitled CASE SUMMARY, listing the name of the individual controller, followed by a litigation assessment of the factual defenses presented by the controller. The summaries contain the attorneys' characterization of facts relevant to controller probable defenses and determinations as to the credibility or weight of these defenses. The summaries use these facts to evaluate the Government's chance of prevailing on the appeal.

Declaration at ¶ 25. A similar description appears in FAA's Fourth Declaration, ¶ 75, except that the memoranda are from one to two pages in length. At oral argument, FAA counsel referred to these as "the documents the decisionmakers looked at"—and "the core of the case."

As we have noted, the district court saw fit to consider these files severable and found that FAA had not carried its burden of showing that the factual portions of the case summaries and other documents for which the privilege was claimed were nonsegregable. With respect, we disagree. We note, first, that in the bellwether work product

case, *Hickman v. Taylor,* 329 U.S. 495, 508–11, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947), the privilege was held to protect statements of fact in an attorney's memoranda of interviews with witnesses. Second, we find persuasive the holding in *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1187 (D.C.Cir.1987):

The work-product privilege simply does not distinguish between factual and deliberative material.... [W]e find that if the work-product privilege protects the documents at issue here, Exemption (b)(5) protects them as well, regardless of their status as "factual" or "deliberative."

Third, we read *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 800 n. 17, 104 S.Ct. 1488, 1493, 79 L.Ed.2d 814 (1984), as having made clear that the "deliberative-factual" distinction recognized in *EPA v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973), as applicable to Exemption 5, referred only to "otherwise nonprivileged factual material." We therefore think that cases such as *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1137–38 (4th Cir.1977), and *Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724, 734–35 (5th Cir.1977), *rev'd on other grounds,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), no longer reflect the law on this point.

We therefore hold that the case summaries are exempt as attorney work product under Exemption 5. The same ruling would apply to attorney memoranda that are not case summaries.

■ *Exemption 5—Deliberative Process.* The district court appropriately noted that this privilege aims to protect documents that are both "predecisional" and "deliberative," quoting *Schell v. Department of Health and Human Services,* 843 F.2d 933, 940 (6th Cir. 1988) (citations omitted): "A document is predecisional when it is 'received by the decisionmaker on the subject of the decision prior to the time the decision is made,' ... and deliberative when it 'reflects the give-and-take of the consultative process.' "

---

**2.** If disputes arise over the relevance of certain information to certain controllers' cases, *in cam-* *era* inspection by the district court would be an appropriate method to resolve such disputes.

The test is "whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C.Cir.1987). Finally, "purely factual, investigative matters" that are "severable without compromising the private remainder of the documents" do not enjoy the protection of the exemption. *Mink*, 410 U.S. at 89, 91, 93 S.Ct. at 837, 838.

■ Much of FAA's argument concerning the deliberative process privilege has centered on the case summaries, which we have held protected by the attorney work product privilege. The remaining documents claimed to be protected by the deliberative process exemption are the adverse action files, which we earlier partially described. The district court summarized the material as follows:

1. agency summaries of the controller's oral response and/or the recommendations of the agency official as to the proposed removal;
2. notes of agency officials regarding conferences with controllers;
3. agency notes recording telephone conversations with controllers or their representatives;
4. records of conferences between agency employees concerning the removal process;
5. memoranda to the file prepared by various agency officials;
6. agency memoranda recording interviews or telephone conversations with acquaintances of the controllers; and
7. memoranda or letters from one agency official to another concerning strike related matters.

Order at 10.

To this list we add responses of PATCO, controllers' written responses, conversations with families and friends of controllers, memoranda and letters to controllers from the agency and from controllers to the agency.

While plaintiff had wanted access to the case summaries principally to see if they contained new evidence justifying reversal of the removal decisions, he conceded at oral argument that the case summaries were not as important as documents containing the evidence on which the summaries were based.

The district court seems to us to have been thoughtful and discriminating in exempting "the recommendations and proposals of agency officials in arriving at the final decision of whether or not to enter into settlement agreements" and "the portions of these documents which contain the FAA's analysis ... in regard to individual cases before the actual decisions to settle were made." Order at 11. Such a formulation would seem to apply principally to the nonfactual portions of item 1 in the above list. We have seen no indication, other than conclusory statements, of such an "intertwining" of factual and deliberative matters as to render the documents nonsegregable.

We therefore affirm the court's ruling on the deliberative process privilege.

### Conclusion

To summarize our rulings:

1. We set aside the court's denial of FAA's motion for summary judgment as to its Exemption 6 claim relating to the withholding of personally identifying information and allow the motion only as to names, locations and addresses before and after a controller's removal, social security and other identifying numbers, and as to any medical, financial, or legal information which the FAA establishes has no relevance to a controller's possible claim for reinstatement.

2. We set aside the court's denial of FAA's motion for summary judgment based on its Exemption 5 claim relating to the withholding of case summaries and similar materials as attorney work product.

3. We affirm the court's granting of FAA's motion for summary judgment based on its Exemption 5 claim relating to the withholding of officials' analysis, recommendations and proposals in individual cases prior to actual decisions to settle, except for factual portions of such documents.

*Reversed in part; affirmed in part. No costs.*